UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AMABLE GONZALEZ, *pro se*,

                        Plaintiff,

         -against-

LEGENDS HOSPITALITY,

                        Defendant.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-6478 (DLI)(RER)

**DORA L. IRIZARRY, Chief United States District Judge:**

Amable Gonzalez ("Plaintiff"), proceeding *pro se*,[1] commenced this action against Legends Hospitality ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (*See* Amended Complaint ("Am. Compl."), Dkt. Entry No. 5, at 1.) Defendant filed the instant motion to dismiss the Amended Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Def. Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), Dkt. Entry No. 19.) Plaintiff opposed the motion seeking equitable tolling for his untimely filing. (*See* Pl.'s Aff. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), Dkt. Entry No. 24.)

For the reasons set forth below, the motion to dismiss is granted and the Amended Complaint is dismissed in its entirety. Plaintiff's Title VII, ADEA, and ADA claims are all dismissed as untimely because equitable tolling is unwarranted. Furthermore, even if the action

---

[1] In reviewing the instant motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, the Court interprets the Amended Complaint "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

had been filed timely, the Amended Complaint still would fail to state a claim for which relief could be granted.

## BACKGROUND

Plaintiff is a Hispanic man, born in the Dominican Republic in 1955.[2] (Am. Compl. at 3, ¶ 7.)[3] From 2009 to 2012, Plaintiff was employed as a utility prep pastry cook for Defendant. (Pl.'s Opp'n at ¶ 12.) Throughout this entire period, Plaintiff allegedly suffered from a torn ligament in in his knee as well as misaligned vertebrae. (*Id.* at ¶ 17.) Sometime in 2012, Plaintiff was terminated. (*Id.* at ¶ 32.)

Plaintiff commenced this action by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") in June 2012.[4] (Am. Compl. at 6 ¶ 10.) On January 15, 2014, the EEOC mailed Plaintiff his Dismissal and Notice of Rights Letter ("right-to-sue letter") stating that the their investigation did not lead to a conclusion that Title VII, the ADEA, or the ADA were violated. (*See* Complaint ("Compl."), Dkt. Entry No. 1, at 4.) Over nine months after the EEOC's decision, on October 29, 2014, Plaintiff filed the present suit claiming employment discrimination related to his "age, race, [and] physical health issues." (Compl. at 1, 2 ¶ 8.) Although the Complaint was deemed untimely and insufficient, in light of his *pro se* status, Plaintiff was granted leave to amend on November 5, 2014. (Nov. 5, 2014 Decision, ("Nov. 2014 Order"), Dkt. Entry No 4, at 3, 5.)

---

[2] While Plaintiff's exact age is unknown, when he filed the complaint with the EEOC, he was over the age of 40, which satisfies the ADEA requirements. *See* 29 U.S.C. § 631.

[3] To avoid confusion due to repeat pagination in the Complaint and Amended Complaint, when necessary, the Court will cite the two complaints using both the ECF pagination and the paragraph numbers that correspond to the respective pages.

[4] Plaintiff proffers two dates of filing with the EEOC in his Amended Complaint. However, the second date, December 5, 2014, actually is the date he filed the Amended Complaint. (Am. Compl. at 7 ¶ 10.) As such, the Court assumes this second date to be erroneous.

2

On December 5, 2014, Plaintiff filed his Amended Complaint. It alleges three causes of action: (1) discrimination based on his race and national origin in violation of Title VII; (2) discrimination based on his age in violation of the ADEA; and (3) discrimination based on his health issues in violation of the ADA. (*See* Am. Compl. at 1, 4, 6 ¶ 8, 7 ¶ 8.) In support of the claims, Plaintiff alleges that his "supervisor made repeated comments to [him] related to [his] age, race, [and] physical health issues [he] was experiencing." (*Id.* at 6 ¶ 8.) Plaintiff offers examples of this commentary. Insofar as race and national origin, Plaintiff alleges that his supervisor asked him why "Spanish people don't appreciate [their] job[s]," and why "Dominican people" act a certain way. (*Id.* at 4, 6 ¶ 8.) Similarly, Plaintiff claims that the commentary about his age included questions about his stamina, and more pointedly, if he was "too old" to do his job. (*Id.* at 4.)

As for timeliness, Plaintiff argues that he could not initiate litigation in a timely fashion because of an illness that began on November 14, 2014.[5] (*Id.* at 4.) In support of this position, Plaintiff attached a medical report showing that he had received an influenza vaccine on December 2, 2014. (*See Id.* at 11.)

On May 15, 2015, Defendant filed the instant motion to dismiss the action for untimeliness and failure to state a claim for which relief can be granted. (*See* Def.'s Mem.)

On March 8, 2016, Plaintiff filed his opposition papers, in which, he made additional factual assertions related to his Amended Complaint.[6] (*See* Pl.'s Opp'n.) Regarding timeliness, Plaintiff claims that he never actually received the EEOC's right-to-sue letter. (*Id.* at ¶ 4.) He states that he did not receive the letter because he moved to a different residence prior to January

---

[5] Plaintiff does not state the year in which he attempted to file his Complaint, but in accordance with the other pertinent dates stated in the filed documents, the Court will assume it is the year 2014.

[6] Plaintiff filed his opposition papers one day after this Court's deadline. (*See* Feb. 10, 2016 Minute Entry.) However, this Court has the discretion to extend time "for good cause," and, as Plaintiff is a *pro se* litigant and only filed one day after the Court's deadline, the Court will consider the submission. *See* FED. R. CIV. P. 6(b).

3

15, 2014. (*Id.* at ¶ 4-6.) Later that year, Plaintiff inquired as to the status of his EEOC claim, and the EEOC informed him that it had already sent him its decision. Following this contact, the EEOC re-sent the letter to his new address. (*Id.* at ¶ 6.) Plaintiff insists that, as soon as he received the right-to-sue letter, he went to this courthouse and filed this action. (*Id.* at ¶ 7.) Accordingly, Plaintiff urges the Court to toll his filing deadline because he "should not be prevented from going forward with [his] case because of a deadline [he] did not even have notice of." (*Id.* at ¶¶ 8-9.)

As to the claims, Plaintiff reiterated in his opposition that he was "being harassed and discriminated against because [he] [is] Dominican, because [he] [is] an older worker, and because of [his] medical condition." (*Id.* at ¶ 14.) To support the Title VII claim, Plaintiff asserted that his supervisor: treated other Hispanics discriminatorily; fired other Dominicans; and asked him about "Spanish people." (*Id.* at ¶¶ 23, 27-29.) To substantiate the ADEA claim, Plaintiff insisted that his supervisor would ask him why he completed tasks slowly and why he lacked energy. (*Id.* at ¶¶ 22, 26.) Finally, to supplement the ADA claim, Plaintiff declared that, in addition to the comments concerning energy, his supervisor also stated the claimed medical reasons for his lackluster performance were "no excuse," and Plaintiff "shouldn't work [there]." (*Id.*)

Ultimately, in addition to these specific factual allegations concerning the three claims, Plaintiff generally stated that "management fired [him] because [his supervisor] thought [he] was [a] threat to him." (*Id.* at ¶ 32.)

On March 21, 2016, Defendant responded to Plaintiff's filing and argued that: (1) a change of address does not justify equitable tolling; (2) the additional factual allegations contained in the opposition papers should be disregarded; and (3) the Amended Complaint should be dismissed as untimely and/or for failing to state a claim for which relief can be granted. (Reply Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Reply Mem."), Dkt. Entry No. 25.)

## **STANDARD OF REVIEW**

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In general, *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read a *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. *See Erickson*, 551 U.S. at 89; *Huges v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Petitioner v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

**I. The Court May Consider the Additional Facts Raised in Plaintiff's Opposition Papers**

Plaintiff raised new factual allegations in his opposition to the motion to dismiss. Generally, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007). New facts alleged for the first time to oppose a motion to dismiss are not generally considered when evaluating a complaint's sufficiency. *See generally Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, No. 09-CV-4622, 2010 WL 4968247, at *5 (S.D.N.Y. Nov. 24, 2010). However, as Plaintiff is a *pro* se litigant, the Court, in "deciding a motion to dismiss[,] may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *see also Nielsen v. Rabin*, 746 F.3d 58, 62-64 (2d Cir. 2014) (reading complaint and opposition papers together liberally would allow the *pro se* litigant to create a cognizable claim); *Palmer v. Schegol*, No. 14-CV-4406, 2016 WL 5678544, at *1 n. 1 (E.D.N.Y. Sept. 30, 2016) (considering amended complaint and opposition papers in deciding a motion to dismiss for failure to state a claim). Accordingly, because Plaintiff is a *pro se* litigant, the Court will consider the additional facts Plaintiff alleged to challenge Defendant's motion to dismiss.

**II. Timeliness of Plaintiff's Title VII, ADEA, and ADA Claims**

*A. Legal Standard*

To pursue a cause of action under Title VII, the ADEA, or the ADA, a plaintiff must file a complaint within ninety days of receiving the right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); 42 U.S.C. § 12117(a). In this Circuit, there is a rebuttable

presumption that, "[a]bsent sufficient evidence to the contrary, it is presumed that a plaintiff received his or her right to sue letter three days after its mailing." *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) (Summary Order); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). Where the EEOC provides notice, it is assumed that the agency mailed the notice on the date shown on the document. *See Sherlock*, 84 F.3d at 526.

In this case, the EEOC mailed Plaintiff his right-to-sue letter on January 15, 2014, and it is presumed that he received it on January 18, 2014. (*See* Compl. at 4.) Accordingly, Plaintiff was required to commence this suit by April 18, 2014. However, Plaintiff filed the Complaint on October 29, 2014, almost three hundred days after receipt of the right-to-sue letter. Therefore, Plaintiff did not file his Title VII, ADEA, or ADA claims in a timely fashion.

Nevertheless, even if a complaint is untimely, the claims therein are not automatically precluded, as "compliance with the filing period . . . [is] not a jurisdictional perquisite to filing a [discriminatory suit], but a requirement subject to waiver as well as tolling when equity so requires." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982). To determine "whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

### B. A Change of Address Does Not Entitle Plaintiff to Equitable Tolling

The Court finds that, under the facts and circumstances of this case, Plaintiff is not entitled to equitable tolling. Any person who files a claim with the EEOC bears the burden of ensuring

that the agency possesses their current address. *See* 29 C.F.R. § 1601.7(b) ("The person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge.") This responsibility is minimal and "[i]t is unreasonable to expect the EEOC to pore over its files, and those of state administrative agencies, in an effort to ascertain which of the addresses contained therein is correct." *Williams v. Chertoff*, No. 06-CV-3847, 2008 WL 2001897, at *6 (E.D.N.Y. May 8, 2008) (quoting *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316-17 (7th Cir. 1984)). Thus, while Plaintiff may be entitled to receive equitable tolling for circumstances beyond his control, "it is well established that non-receipt of a right-to-sue letter because of a change of address about which the EEOC was not informed is not an event beyond plaintiff's control." *Felton v. N.Y. Post*, No. 90-CV-2254, 1990 WL 113176, at *2 (S.D.N.Y. Aug. 2, 1990) (denying equitable tolling due to plaintiff's failure to notify the EEOC of address change during prolonged absence), *aff'd*, 930 F.2d 908 (2d Cir. 1991); *see also Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 120 (1st Cir. 2009) ("[Plaintiff's] lack of diligence in filing a change of address with the EEOC as required by 29 C.F.R. § 1601.7(b) is sufficient to reject his equitable tolling claim."); *Williams*, 2008 WL 2001897, at *6 ("If a plaintiff does not receive a right-to-sue letter due to his or her failure to inform the EEOC of a change in address and thereafter files an untimely civil complaint, the complaint must be dismissed.")

Here, the letter was sent to the address that the EEOC had on file for Plaintiff. (*See* Compl. at 4.) Plaintiff alleges that he did not receive the letter, as he "recently moved from [his] apartment on Liberty Street, where the letter was addressed, to" another address in Brooklyn. (Pl.'s Opp'n at ¶¶ 4, 5.) Noticeably, Plaintiff does not allege in any submission that he attempted to inform the

EEOC of his new address. Consequently, as Plaintiff allegedly did not receive the right-to-sue letter because of his own failure to update the EEOC, equitable tolling is not warranted here.

### *C. Plaintiff Has Not Sufficiently Alleged an Illness to Warrant Equitable Tolling*

Plaintiff also claims he is entitled to equitable tolling based on his inability to file the Complaint due to illness. A lack of diligence on the part of a complainant will not suffice to invoke equitable tolling, but "equitable tolling may be appropriate where the plaintiff's failure to comply with the statute of limitations is attributable to the plaintiff's medical condition." *Brown v. Parkchester S. Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002). To succeed on such a claim, the litigant must provide "a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights," and without such precision, the claim is "manifestly insufficient to justify any further inquiry into tolling." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Plaintiff has not provided a valid justification for how his illnesses, a stomach virus and the flu, supposedly affected his ability to file during the required ninety-day period. (*See* Am. Compl. at 4-5.) The only facts alleged concerning sickness discuss an apparent attempt to file the Amended Complaint on November 14, 2014. (*See Id.*) On that date, Plaintiff had an appointment to file his Amended Complaint, but did not do so at the behest of a court employee who suggested that Plaintiff come back when he was feeling better. (*See Id.*) This situation, which occurred approximately seven months after Plaintiff's filing deadline, has absolutely no bearing on an illness that would have prevented him from timely filing his original Complaint by April 18, 2014. Accordingly, Plaintiff's request for equitable tolling also is denied for this reason.

**III. The Pleadings Do Not State an Actionable Claim**

Even assuming this action was commenced timely, Plaintiff's Amended Complaint and opposition papers do not contain sufficient facts to support a claim for which relief can be granted under Title VII, the ADEA, or the ADA. As his Amended Complaint suffers from similar substantive flaws that this Court deemed inadequate in his Complaint, the motion to dismiss must be granted, with prejudice. *See* Nov. 2014 Order, at 3-5.

*A. Title VII Claim*

It is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff has the initial burden of establishing a *prima facie* case of discrimination under Title VII by showing: "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

At the pleading stage of a Title VII claim, while establishing a *prima facie* case is beneficial, Plaintiff is "not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, in order

> to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.

*Id.* at 87.

Here, Plaintiff asserts that he is of a certain race and national origin, and that his employer made negative comments related to those characteristics. (*See* Am. Compl. at 3 ¶ 7, 4; Pl.'s Opp'n at ¶¶ 14, 23, 27-29.) However, while Plaintiff alleges an adverse employment action (*i.e.*, termination), he does not claim that his employment was terminated *due to* his race or national origin. Instead, he pleads that he has he was fired because his manager felt he was a threat. (Pl.'s Opp'n at ¶¶ 12-13, 32.) Consequently, Plaintiff fails to state a claim under Title VII.

### B. ADEA Claim

It is unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff, in order to establish a *prime facie* case of age discrimination in violation of ADEA, must show: "(1) that [he] was within the protected age group; (2) that [he] was qualified for the position; (3) that [he] experienced [an] adverse employment action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. Jet Blue Airways*, 596 F.3d 93, 107 (2d Cir. 2010) (citing *Carlton v. Mystic Transp. Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).

For an ADEA pleading, a plaintiff is not required to make out a *prima facie* case to survive a motion to dismiss, but rather, "must plausibly allege that adverse action was taken against [him] by [his] employer, and that [his] age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfr. Co.,* —F. App'x—, 2016 WL 4598580, at *2 (2d Cir. Sept. 2, 2016) (citing *Hempstead Union*, 801 F.3d at 87) (Summary Order).

Plaintiff belongs to the protected class because he was over 40 years old at the time of the adverse action. *See* 29 U.S.C. § 631(a). (Am. Compl. at 3 ¶ 7.) However, he blames his

termination on the fact that his manager felt threatened by him, not his age. (Pl.'s Opp'n at ¶ 32.) Besides attenuated comments related to his energy and work speed, Plaintiff fails to show that his age was the "but-for" cause of his termination. (*Id.* at ¶¶ 22, 26.) Thus, Plaintiff's ADEA cause of action is dismissed for failure to state a claim.

### *C. ADA Claim*

In general, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). In order to state a claim under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [his] employer; (3) [he] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [he] suffered an adverse employment action; and (5) the adverse action was imposed because of [his] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

While a plaintiff is not required to make out a *prima facie* claim in order to survive a motion to dismiss, its composite elements are instructive in analyzing whether a plaintiff has alleged facts sufficient to give rise to a claim. *See Bernadotte v. N.Y. Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 WL 808013, at *7 (E.D.N.Y. Feb. 28, 2014). Thus, to succeed at the pleading stage in an ADA claim, "a plaintiff must plausibly allege that (1) [his] employer took an adverse action against [him], and (2) the disability or perceived disability was a 'motivating factor' in the decision." *Miller v. N.Y.C. Dep't of Educ.*, No. 16-CV-5306, 2016 WL 5947272, at *1-3 (E.D.N.Y. October 12, 2016) (citing *Hempstead Union*, 801 F.3d 72, 87) (dismissing claim for failure to provide facts that connected potential discrimination to Plaintiff's torn ligament and spinal damage).

Here, Plaintiff fails to state a cognizable claim under the ADA. Plaintiff alleges that he tore a ligament in his left knee and that he had five misaligned vertebrae during his period of employment. (*See* Pl.'s Opp'n at ¶ 17.) However, in this case, like in *Miller*, Plaintiff fails to connect his injury to his termination. *Compare* 2016 WL 5927272, at *1-2, *with* Pl.'s Opp'n at ¶¶ 17, 32. In fact, while he alleges that the comments made by his supervisor concerning his energy and work speed were based on his disability, the only reasoning Plaintiff offers for his termination is that his supervisor felt threatened by him. (Pl.'s Opp'n at ¶¶ 22, 26, 32.) As a result, Plaintiff fails to state a claim under the ADA.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the Title VII, the ADEA, and the ADA claims is granted. Plaintiff is denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Therefore, *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2017

/s/
DORA L. IRIZARRY
Chief Judge